With your argument first this morning, in Case 13-301, United States v. Clarke. Ms. Harrington. Thank you, Mr. Chief Justice, and may it please the Court. In this case, the Eleventh Circuit unambiguously held that a district court always abuses its discretion when it denies a summons opponent's request to examine IRS officials based on an unsupported allegation of improper purpose. That holding was wrong for at least three reasons, and even Respondents don't defend it at this point. The three reasons are, first, the Eleventh Circuit's rule ignores Congress's intent that IRS summons enforcement – excuse me – proceedings be summary in nature. Second, the automatic examination rule is inconsistent with this Court's treatment of analogous administrative and grand jury subpoenas in other contexts. And third, the rule fails to respect the district court's core discretion to govern its own proceedings, including governing when and how evidence should be developed. Scalia. As you say, the Respondent concedes all that. So why don't you talk about what the difference is between you and the Respondent? Nobody defends what the lower court said here, right? I'm happy to. The Respondent suggests two what we think of as unworkable limitations or potential limitations on the rule. The first is that there would be a requirement that the allegation be plausible, though totally unsupported by evidence. And in our view, any plausibility requirement that is untethered to a requirement that a summons opponent actually point to some evidence that would substantiate the allegation is really not a limitation at all. Is there really a difference between those two, do you think? Can it be plausible if there's no evidence that suggests that it's true? Well, in our view, no. I think that's the question that you might want to direct your Respondents. They seem to suggest that. It may well be that the two of you agree, in other words, depending on what they think. And if that's true, then we invite the Court to reverse the Eleventh Circuit. I mean, the rule that we want, what we would like is that before a district court is actually required to allow examination of IRS officials, a summons opponent has to put in enough evidence to at least raise an inference of improperty. But it all depends on what you mean by evidence. You mean direct evidence? Is circumstantial evidence enough? Circumstantial evidence is enough. And again, what we're asking for is really a modest rule. A district court, in our view, has discretion to allow examination of an IRS official. Ginsburg-Coperty Could you apply your rule, district court discretion, in this particular case? There were two allegations, I think, that the first one was that the this was in retaliation for the taxpayer's refusal for the third time to extend the limitation period. And the other was this was an effort to circumvent the limited discovery that's allowed in the tax court. Now, those are the allegations. What would the taxpayer have to say in addition to those two allegations to pass your test? Well, so I think there are sort of two threshold questions that the district court would consider. The first is whether those would actually be improper purposes, and the second is whether, if they would be, they were actually the motivating purposes in this case. The district court, the court of appeals in this case only considered the statute of limitations question, and it found that issuing a summonses after a taxpayer declined to extend a statute of limitations would be an improper purpose. We disagree with that legal holding, but that's not the question in which we sought this Court's review. Kennedy, let's assume that it is inappropriate for the IRS to avoid taxpayer tax court limitations on discovery. Let's assume that a subpoena cannot do that. The Sapinski declaration, it seems to me, is quite sufficient to make that showing. Well, I would just say, so there's a case we cited in our reply brief called Ash v. Commissioner, which is a tax court case, which says that in the tax court's view, there's no problem with enforcing a summons that was issued before tax court proceedings were initiated, as was the case here, that there's no problem, there's no interference with the tax court discovery rule when you do that. But my supposition was that assume that you cannot avoid taxpayer tax court discovery limits. If that is so, it seems to me the Sapinski affidavit is quite sufficient. Well, it may or may not be. And again, if this Court corrects the 11th Circuit didn't consider that, because in the 11th Circuit's view, there didn't need to be any evidence. And so the 11th Circuit did not examine the sufficiency of the evidence that the Respondents presented. And so if this Court corrects that legal rule, Respondents can make these arguments on remand to the 11th Circuit. But I would just point out, with respect to that, that proposed improper purpose, that the validity of a summons is judged at the time that the summons was issued. And in this case, the summonses were issued before there was any tax court litigation. There's always the possibility when a summons is issued that there's going to be tax court litigation down the road after the IRS makes its determination of a process. Scalia, that's a point for argument. I mean, you can argue that to the district court. Absolutely. You don't want us to resolve that here. Breyer, I mean, you can easily imagine circumstances where there's a subpoena, an administrative subpoena, issued against Mr. Smith, by the time he comes around to enforcing it, where there's very little reason to enforce it. Mr. Smith is suffering an incurable disease, and the district court would say, no, it's oppressive. Right? I mean, I've never heard of this rule that you, a district court, would be forbidden to look at the circumstances in which the subpoena or any other discovery document is being asked to enforce it now. I mean, where does this rule come from that the district court can't look at the circumstances now? I'm not saying the district court can't look at the circumstances now, at the time of enforcement. There may be circumstances where it would. Very well. Once we say that, they've asked this question on the merits here. They say, why in heaven's name have they issued? Why have they asked this enforcement? There are only two possible reasons. One is to get some information in the years 2005, 2007 that would show that they owe more money than you claim they do owe since you issued a final thing, which would be impossible because the statute of limitations is run. And the other possible reason is that you wanted to obtain information to put in the tax court proceeding, which, in fact, is supported by the fact that the agents who came to enforce it were tax court lawyers and not the regular lawyers, and, in fact, would be absolutely illegal under the law, the rules of the tax court. So they say, that's our information. That's why we think this is oppressive. And your response to that is, if they're wrong, why do you want this information? Well, we think they're sort of wrong, wrong, wrong, and wrong. You're good, then? Okay. Why is it that the government wants this information? To do what? Because so, just to take a step back, the Court said in Powell that the inquiry is whether the summons were issued for a proper purpose. This Court said in Couch that the legal parties, the parties' legal duties are fixed at the time that the summons was issued. So if you adopt the type of approach that they're asking for, what you're going to do is give taxpayers an incentive not to comply with the legal duty that's imposed on them by operation of law, which is to disclose information related to their tax liabilities, and then to comply with summonses that are validly issued. You give them incentive to drag things out until the statute of limitations is about to run and they file a tax court proceeding. The question was, why do you want the information? We want the information because the IRS wants to make a determination of their tax liability. Breyer. Wait, wait. Now explain that one to me. Now, when you say information, isn't the final partnership determination the final partnership for the years 2005, 2007? Is it you want the information to revise that? Is that why you want it? That is, I mean, yes. So. Yes. So you want the information. I want to know yes or no. What are the reasons you want this information? One is you want to change the number on the final partnership assessment of liability. Is that one of the reasons? Yes or no? Please. We want the right answer. And if the right answer is that we were wrong in the FPAA, then we would revise the FPAA. You want to be quite precise. I've asked the question, do you want the information with the idea in mind that it might show you should change the final number? Yes. Yes. Is there any other reason you want the information? No. Okay. Thank you. Well, can I ask you this? Justice Alito. Can I ask you this on a related point? The IRS has to, as an initial step, if the person who subpoenaed resists enforcement, the IRS has to submit an affidavit saying it has a proper purpose. Yes. Right? Suppose that that affidavit says we have a proper purpose, and our proper purpose is solely this, we want discovery for the tax court case. In your view, is that a proper purpose? So the premise of your question assumes that there is already a tax court proceeding underway. Right. And so that might not be a proper purpose because the IRS has said you need extraordinary the internal IRS guidelines say you need extraordinary circumstances to issue a summons after tax court proceedings are underway. And the tax court has similarly said you can only use evidence obtained through those summons in extraordinary circumstances. But in almost every case, a summons is issued long before or at least somewhat before a tax court proceeding is initiated because it's the IRS is trying to get information to make a determination about the tax court proceeding. All right. Well, so suppose the answer is this. We have a proper purpose. We have no interest whatsoever in changing our assessment. However, we anticipate that there's going to be a tax court proceeding, and we want to get discovery for the tax court proceeding. Is that a proper purpose? I think that would be a question that would need to be decided in a particular case. The reason I'm hesitating to give you a straight answer is because that's just not the way the IRS works. The IRS is trying to get the right answer. And believe it or not, sometimes when the IRS gets more information, it will actually give money back to a taxpayer. It might be that if it gets information, it might exonerate the IRS's finding of improper liability, or it might actually bring to light to the IRS the fact that the taxpayer has overpaid it. Sotomayor, could I go interrupt now, just to get back to the question Justice Alito started with earlier, and finish it. What do you mean by evidence? And I ask this because I'm trying to figure out whether we're in the Ichabal-Twamle world, where what you mean by evidence is sort of a sworn complaint that points to facts from which a plausible inference can be drawn, or whether you're talking about evidence as a summary judgment standard, where they have to proffer affidavits and show documents and sort of go through a summary judgment standard. Because evidence is a – has a lot of meaning, and I'm not quite sure which one. So it's more like summary judgment than Ichabal. I don't think summons enforcement standards exactly map on to any other civil standard like this. I'll tell you why we think the Ichabal standard does not apply. There's a couple of reasons. First, the Ichabal-Twamle standard is a pleading standard. It's not about what kind of evidence. It's not about production of evidence to support your pleadings. And so in this case, what we're saying is it doesn't matter how artfully you plead that there is an improper purpose. You need to be able to point to some kind of evidence to support that, to raise an inference of improper purpose. Sotomayor, that means point to some facts. Point to some facts that – that – that's why I'm saying. I don't know that – let me tell you what I would have done if I had gotten this. All right? If I had gotten their information, I would have looked at the government and said, explain to me why you need this. I would have done what Justice Breyer did. And then I would have figured out and asked you enough questions without holding a hearing, just through your attorney, until I got to a point whether I decided whether or not your answers, like the district court did here, made sense or not. And if they didn't make sense, then I would say, no, let's go a little further. And absolutely, we would say you would have discretion to do that as the district court. We're not looking to constrain a district court's discretion here. And I think it's important to keep in mind, another reason the Ichabal standard really doesn't work here, is that by the time you're getting to this question about whether there's an improper purpose, as an opponent has alleged, the government has already made a substantial showing of good faith. The government has filed the Powell affidavit. A district court has satisfied itself that the government has established a proper purpose. And then the presumption is that the government's acting in good faith and for a proper purpose. And so when you're – in the Ichabal context, the person who files the complaint is entitled to the presumption that what they say is true. It's the opposite here. Sotomayor, why not make life very simple, and I think that's what your counterpart is trying to do, is simply to say you have to point to facts from which a reasonable inference of improper motive can be drawn. That's what we're saying. That's exactly the standard that we think should have been applied. And if – and as long as an opponent, someone's opponent can do that, can point to facts that raise an inference of improper purpose, then a district court needs to allow examination of IRS. But that doesn't – that doesn't really seem very helpful, because there are inferences and there are inferences. There are weak inferences and there are strong inferences. I don't think it's very helpful to a district judge for us to send this back and say, figure out whether there is an inference here of some unspecified strength. You know, take the retaliation issue. You have, let's say the – these are the facts. The IRS asks for a further extension of the statute of limitations. The taxpayer says, no, I'm not going to agree to any further extensions. And then a half an hour later, the summonses are served. So you have one thing happening shortly after another. It gives rise to an inference of retaliation. Maybe it's a very weak inference. Maybe it's a stronger inference. Do you see what I'm saying? We have to specify something other than it gives rise to an inference of some unspecified strength. Well, with respect, Your Honor, that's the rule that's applied in the 11 other courts of appeals that have jurisdiction over these matters. And it really has not been a problem in the district courts in those courts of appeals. It's only the 11th Circuit that has held you don't have to point to any evidence, you don't have to raise an inference, the district court has no discretion to deny this case. Roberts Counsel, could I – we hear that argument a lot, that there's never been any showing of any problem in these other circuits. But do you have any study to support that? I mean, I don't know that we – how you would tell. I mean, because these proceedings, not everybody is going to say I'm going to appeal, particularly facing the IRS, and go forward. Do you have any basis for the argument that this has not been a problem in the other circuits, other than the fact that we haven't had a case yet, or the courts of appeals haven't had a case? I can't point to any study, but I have to think that if there were serious problems, then you would see a lot more litigation about this issue. What do you mean about a problem? I mean, some of them are applying a requirement of a strong inference, and others are applying a requirement of a weak inference. How is that a problem? I mean, you can say no problem. They're just doing what they want to do. But none of them is applying the rule that the 11th Circuit applies, which is you don't have to have – you can just have an unsupported rule. We're way beyond that. I mean, that doesn't matter. Well, not necessarily great. One thing that, when we articulate a new standard, sometimes we like to apply it to the particular case to give clearer guidance over exactly what we mean. And in this case, and particularly here, when we're not being asked to resolve a legal question in the particular case, we're just trying to say what do you need to show a hearing, require a hearing. They've got a – you know, they've got more than just a bare allegation. They've got the summons – first of all, it's the third request for an extension. They've got the summons immediately after they refuse to grant it. They've got a contention that this is to circumvent the tax court limits. They support that by the fact that when Moog came for the deposition, he only had the tax court lawyers there, not Mr. Freefielder, who was – Friarfielder, who was running the investigation. That's more than just a bare allegation. Well, if I can separate the two allegations on the – on the statute of limitations issue. There were – there were three or four, not two. Well, I'm sorry. They're different allegations, but they're sort of two reasons. I'm sorry. Maybe it's because it's a tax case. If you could slow down just a little bit. I'm sorry. I'm with you. So the two purposes, improper purposes, that they discuss before this Court are, first, retaliation for refusing to extend the statute of limitations, and second, circumvention of tax court discovery rules. So as to the first, again, I think you need to step back and ask, well, would it be an improper purpose for the IRS to issue a summons after a taxpayer declines to extend the statute of limitations? No, it's a little bit more than that. It's the third request for an extension. How often does the IRS request the taxpayers to waive the statute of limitations? I can't give you statistics, but my understanding is that the IRS does everything it can to get the information voluntarily and in a cooperative way from taxpayers before it has to resort to a summons. And so that often involves asking for extensions of the statute of limitations. Roberts. Well, I know, but Congress has established these statutes of limitations, and the IRS has enormous leverage. They're sitting there saying, well, we could file this thing saying you owe $150,000 in taxes, or you could give us more time and we'll think about it longer. And my sense, just from looking at the cases that come in and certifications, that happens almost always. They're always saying give us more time, give us more time. And I don't know how many times it happens three different times. I mean, three successive. To be honest, I don't know how often that happens either. I don't think it's infrequent. But I think you have to understand it within the context of the tax system. This isn't a system where the obligation is on the IRS to figure out how much each of us owes and to come after us for that amount. The obligation, Congress has put it on the taxpayer to determine, everyone has to do their own taxes, figure out how much they owe, and to give documentary evidence supporting their determination of how much they owe. And Congress has also told the IRS, we want you to go out and inquire into the liabilities of taxpayers with respect to any tax and figure out if people are doing this correctly. Roberts. And we want you to do it within whatever the statute of limitations period is. That's right. But if the IRS goes to taxpayers, they don't just go to a taxpayer and issue a summons right off the bat. They go to a taxpayer, in this case the partnership, they made two deductions, questionable interest deductions, totaling $34 million. The IRS said we're not sure about this. They asked for information that would allow the IRS to determine whether the deductions were correct. Now, keep in mind. Kennedy, I know what your position is in this case in your answer to the Chief Justice. Is it your contention that on this showing, that on these affidavits, a district court may not order a hearing? No, we're not offering a line that a district court may not. So you say that the district court, that there is a sufficient showing here so that a district court, in the exercise of its discretion, could order a further hearing? Yes. I mean, we think almost any time a district court thinks there's a reason to hold a hearing that would allow examination of IRS discretion. The problem is you say the district court could say, yes, I'm going to, I'm going to require this agent to testify, or no, I'm not going to. You're using a discretion test, but you're not giving the district judges all over the country a clue about appropriate exercise of that question. And if I understand your most recent answer, you're saying it could go either way, it's up to the district judge. Well, I mean, I think any time you're talking about the district court's exercise of its discretion, you're going to have a range of situations in which the district court could do A or it could do the opposite of A, and it wouldn't be an abuse of discretion either way. That's the nature of discretion. In our view in this case, if a district court sees a reason to hold a hearing and allow examination, it should do that, and the IRS, the government, may argue. Kagan. Can I ask, Ms. Harrington, in the 11 circuits that follow what you think is the right approach, what actually happens? How often do courts ask IRS agents to come in and to give testimony about why they're why they've issued a summons? I don't have statistics. It's really hard to get numbers on all of these sort of numbers-based questions, and I apologize for that. But my sense is it doesn't happen very often. But sometimes- Ginsburg. But there was a time when the government thought that was the right procedure. The Salter case has been mentioned, and there the government itself made the suggestion that if there's an allegation, an allegation of improper purpose, the court should have a hearing at which the taxpayer gets an opportunity to question the agent. Well, Justice Ginsburg, it's not quite right that, first of all, we offered a testimony just in that case. I don't think we offered that as a rule to govern all cases. But also, it wasn't just about any allegation of improper purpose. It was about a particular type of purpose that was relevant then, which is an allegation that the IRS had a criminal investigation only purpose. And when Congress enacted TEFRA in 1982, it took that allegation of improper purpose off the table by sort of drawing to – making irrelevant whether the IRS, whatever its internal motivation was, whether it was looking at criminal or civil liability. It took that off the table. And so all the courts of appeals from the 70s and 80s that allowed examination of IRS officials, as a matter of course or more frequently, all of those courts of appeals except the Eleventh Circuit changed their rule after TEFRA was enacted, because all of those holdings were really just about whether the IRS had a solely criminal investigation purpose. Kagan. Ms. Harrington, can I go back? You said it's rare. Does that mean it's really – it never happens? I think it happens sometimes. It doesn't happen very often. And, again, I think that's because before you even get to the question, the IRS has already made a significant showing through the Powell affidavit. It has established that it has a proper purpose. And the IRS doesn't just say we have a proper purpose. They have to identify the purpose. And if you look on pages 24 and 25 of the Joint Appendix, you will see the purpose that's alleged in this case, which is looking into these questionable interest deductions. Breyer. But there's more. That's how I'm – what I don't have clear in my mind is how to write the facts into this. I mean, before we had our previous colloquy, I guess they had no idea why you wanted this information more specifically than you're saying. And then you say, quite truthfully, it only took three seconds. And you said, no, we want it because we might want to revise the final partnership – final partnership administrative adjustment. Then what perhaps they'll say next, I'm just getting this out of their brief, is say you – in your own handbook, you say once that's issued, the examination has been concluded, and the service should no longer be in the process of gathering data to support a determination. And then they have a whole paragraph full of similar things from the IRS thing. So they'll read them to you, not you, but the lawyer, and they'll say, well, what was special about this that you decided to have this extra examination? And they'll have to be an answer to that. As a sort of layperson in this area, reading that, that sounds like a good set of questions to ask. You'd be interested what the answer is, and they should be able to ask them. Now, am I missing something? Can I say – would I cause some kind of big problem for something? Or if I were to say, in an opinion, look, this is the kind of thing that they want to know, and it sounds as if, since we don't know your side of it, but it sounds as if this is the situation that they should be able to find out. Well, the problem is that the IRS seeks the information when it issues the summons, and that happens before the FPAA was issued. It happened before there's tax court proceedings. And so if you write an opinion that says, well, if you – you know, if the summonses don't get enforced until after the FPAA is issued, and at that point the taxpayer is entitled to examine IRS officials, then you're giving taxpayers an incentive not to comply with summonses that are validly issued. Now, the order to show cause was issued by the district – excuse me, that was issued afterwards, but the taxpayer has an obligation, even before the summonses are issued, to provide information to the IRS to support its tax liability. Once the summonses are issued, it certainly has an even stronger obligation. And just because that hasn't yet been enforced in the district court, just because the Respondents refused to comply with their obligation. Scalia. I am trying to figure out the difference between the two sides here, and I guess you can only answer for half of it. But I suspect the difference is you are saying that there is enough evidence here to allow a district court to exercise its discretion, but not enough to reverse a district court if it did not exercise its discretion in favor of allowing the hearing. Yes. Is that right? That's exactly right. And I suspect the other side will be saying there is not only enough to enable the district court to make the finding of a hearing, but there's enough to compel the district court to do that. We'll see what they say about that. If I can reserve the balance of my time. Thank you, counsel. Mr. Murad. Mr. Chief Justice, and may it please the Court, a taxpayer is entitled to a limited evidentiary hearing when he presents specific facts from which an improper purpose in issuance or enforcement of a summons may plausibly be inferred from those facts. So you would reverse the district court here if the district court you're not defending what the court of appeals said, that you're entitled to a hearing in every case, whenever you say improper motive, yes, you don't defend that. If we read the case that way, I don't defend it. I read it to say that you look at pleading standards, including Iqbal, you look at all of the other cases that it relied upon. We have the opinion of the Eleventh Circuit. Where does it say that? It doesn't say those words. It says we made a complete and detailed review of the entire record. We are applying pleading standards in the course of this, and we are relying on NERO and its predecessors, all of which say, for instance, you can't get this hearing by just saying denied, or just saying I think they were acting with an improper purpose. And so, therefore, if you put all these things together in an unpublished opinion that's deciding my case, we think that that's what the result was of what they were doing. But the rules that I'm going to use here, I'm going to use the word evidentiary hearing. Sotomayor, I'm going to use the word evidentiary hearing by just saying denied.  The second part of my definition is live witnesses. Is that your definition? What I'm talking about is a limited evidentiary hearing. And at that hearing, there would be. I'll define what hearing means to you. It would very well be live witnesses. It would be up to the discretion of the Court based on what allegations were made in that particular case. But the typical case. But that's the problem. Sotomayor, I think the Eleventh Circuit means a live hearing because of its jurisprudence in this area, which has barred any other kind of evidence to be sought from the IRS. It has a case that says you can't have depositions, you can't have discovery in its traditional sense, documents or other things. But I don't know, has it also said you can't have affidavits? No, it doesn't say you can't have affidavits, and we have provided affidavits in case it does. Sotomayor, not you, then, the IRS. Right. No, the Eleventh Circuit has not said you can't present evidence by means of affidavits in order to try and support your position. What it has said is. I'm talking about the government. Because I started by asking you, are you looking to cross-examine IRS agents? We believe that what the Eleventh Circuit says we have the right to do and what we want to do is to get at least Mary Feuerfelder in so that we can cross-examine her with respect to her affidavit, which we have serious doubts about. Now, as Ms. Harrington indicates, the taxpayer does have a duty to provide information to the IRS, but in this particular case, what doesn't appear in the record is that the IRS lived at Dynamo for 2 years before these requests for enlargement of time. They weren't doing anything for a long period of time, as we indicated in our submissions, our allegations, our affidavits. They didn't do anything for a long period of time. Then they suddenly asked for a new extension of the statute of limitations. Then when we denied it, they promptly filed these summonses and. Sotomayor, in Powell, we said similar allegations weren't enough. The fact that the documents had already been reviewed or that the statute of limitations has passed, that that wasn't enough. So what have you given us here? What have you alleged that's greater than Powell? All right. We're not saying it's because the statute of limitations has passed. We're saying it's because the FPAA has been issued, and the FPAA, according to the statute, you're only permitted one FPAA. You can't go back and modify or amend the FPAA. Once you've done that, as Justice Breyer indicates, the matter is completed in terms of the examination. And so that's just the opposite of what Ms. Harrington told us. She said the only purpose of enforcing these subpoenas was the possibility of amending the FPAA. I thought I understood her to have said that. Ms. Harrington said that that was what she thought one possibility might be. We contend they cannot amend the FPAA. I think she said it was the possibility. I asked her if there were others.  Right. But there will be an argument. Whether they can or cannot amend it. Right. We believe the law makes it clear that they can't amend the FPAA and that once the FPAA is issued, the possibility of amendment of what's in there moves to a court. It either moves to the Federal court of claims or it moves to a district court, a bankruptcy court, or to the tax court. And when someone is asked to pay as much money as was asked for in this case, the tax court is the logical place to go because it's the only one you can go to without first paying all the money and try to challenge. Could you have said in the tax court, now the proceeding has begun, in the tax court, say, tax court, there is, the subpoenas, they are attempting to get information that they could not have gotten from this court through discovery. So court say no enforcement. Correct. We're saying. Did you ask, I mean, that would be a possibility. You're saying that once the case shifts to the tax court, it should be the tax court judgment, not a district court reviewing the subpoena. I understand. But we can't ask the tax court to not enforce the summonses because Congress has given exclusive jurisdiction to enforce or not enforce summonses to the district court. And in fact, the Ash case that Ms. Harrington referenced actually held, we don't have jurisdiction to determine whether these should be enforced or shouldn't be enforced. If they go ahead and allow them to be enforced and the information is gathered, we will then consider the information that is gathered for whether it is admissible or not admissible under rules of evidence in a particular case. The we, the we is who? The we is the tax court? I'm sorry? Whose words are you, are you repeating? The words of the Ash case from the tax court. Okay. So it's the tax court that's talking. Correct. And. Do you know offhand what is the provision of law in which you rely for the proposition that the FDAA cannot be amended? It's 26 U.S.C. 6223 sub F. Could you say it again, 6223? Yes, 6223 sub F. Thank you. So our belief is that once the tax court case has begun, all discovery in that case should be there. And we have already said that once that case started was the first time they tried to enforce these summonses. The summonses were issued back in October and September of 2010. They weren't obeyed back in 2010. The IRS manual says, and I know it's not the force of law, but it does say what the IRS says, which is if they don't perform the summonses, you must come in and seek enforcement of that summons within 3 days. And then it moves up the channel and then you must pursue that as quickly as you can, and they didn't do that. Nothing happened in terms of trying to enforce these summonses at any time until the FDAA was issued. In addition to that, we know that the FDAA that was issued on December 28th of 2010 was actually signed by this agent on August 11th of 2010 and was issued without any change. And so what we're looking at here is an agent who has finished the FDAA in August, suddenly issues summonses in September and October when they're not performed, doesn't try to get them enforced, because if she had wanted that information for the purpose of completing her FDAA, which she had already completed and might be considering revising, she didn't do that. And she had the opportunity to do that and she was implored by the IRS manual to do those things, and she didn't do those things. Then the FDAA goes out, we file a tax court case, they answer a month later is the indication from them that they want to try and enforce these summonses, and what they're looking for is documentation that they could easily get through a request for production of documents in the tax court. Their only problem in the tax court with getting those documents would be it would be subject to a scope objection with respect to discovery, whereas under a summons there is no objection to scope. If they can ask for anything that they want that has anything to do with the finances of the particular taxpayer, and that's why we make the analogy to Rule 2004 of the Bankruptcy Court rules, where trustees and creditors and other parties in interest can ask for information about the finances of the debtor without any limitations on what they can ask. Kennedy. I just want to make sure I understand. The district court has in front of it a request to enforce a subpoena. The district court has no authority at all, either on its own motion or by request from the taxpayer, to limit that scope, the scope of discovery, millions of documents? It just has to sign it? I mean, is that what I'm hearing? There are cases in which district courts have in fact limited the scope of summonses. In the typical enforcement of a summons, if they serve you with a summons, you're not entitled even to have a lawyer at the examination. You have to give them everything. If you don't give them everything or make an excuse why there isn't, that something doesn't exist, then you're into these enforcement proceedings and then you have to go into that litigation. We are not going to go into that litigation. Kennedy. In that litigation, in the district court, once you are before the district court, you can make an objection as to excessive scope? Yes. We didn't make an objection as to scope because they made such a broad FPAA or they were making such broad allegations at the time these summons initially came out and they were making such broad allegations in the tax court that that would not be successful. And we don't think that the district court should be deciding what the correct scope is. We – that's something that the tax court should be deciding based on what the issues are in the tax court. The tax court was designed to specially know about all of these issues that come up relating to tax returns and examination of tax returns and some of the other things. But at the point where the summons is sought to be enforced, it may be that there is no tax court proceeding yet and there may be never any tax court proceeding. So how can the district judge make a ruling predicting the future costs? I don't think it can, Your Honor. I don't believe that if these summonses had been – if enforcement proceedings had been begun in 2010, before the FPAA had been issued, before any tax court proceeding had begun, that we could at that time, in good faith, have signed the paper under Rule 11 saying they're only going to use this for use in the tax court, they're not going to use it for the FPAA. We haven't – we haven't seen the August 11th FPAA that was signed by Ms. Feerfelder until after it was issued in December of 2010. What is it that you want to ask – I suspect at this hearing you want to call her? Absolutely. What do you want to ask her? Without giving up your – No. Without giving up the element of surprise. What general areas of inquiry would you like to explore? I'm pretty sure surprise is gone at this point, Your Honor. But why did you delay in issuing these summonses until the very end of this case, of the statute of limitations period, when you had had people in the store for 2 years looking at everything that was available? Why did you delay? Why did you sign the FPAA, which is your final partnership administrative adjustment on August 11th of 2010, if you hadn't completed your examination already? When did you send this final partnership administrative adjustment up to be issued? It's the way I understand this works. It has to go up through the ranks. She can't just issue the FPAA herself. It has to be issued out of Washington, D.C. And, of course, the last one would be questions related to, in what role would the enforcement of these summonses have in helping your examination, which is one of the two purposes that might possibly apply to this case, in view of the fact that there's a tax court case pending and an FPAA has already been filed? What could you possibly use this for in the course of your examination of these tax returns for 2005, for 2000? Kennedy, it seems to me that if those are the questions you're going to ask, that almost every taxpayer's lawyer could ask those questions in almost every subpoena case. I'm now concerned, I thought that there was agreement, I now think there's much more to the government's position than I had thought with reference to harassment. I think you can ask that in any tax case I've ever heard of. Well, until the FPAA has already been issued, I'm sure you can't ask it. And in most of these cases, the summonses are being enforced long before the statute of limitations comes. If you look even at the tax advocate report that is included in the reply brief of the — a reference in the reply brief of the government in this case, you see that there were 117 cases that were — had reported decisions over the last year. And it lists who was represented and who wasn't. And almost no one was represented. I believe it was 12 people had lawyers, and only a couple of them resulted in IRS — the IRS losing. They said we lost, that they lost in this case. We're not sure that they've lost yet. Just to be clear on what you're — what you're asking us to do, you want us to affirm the judgment on — but on a different — well, on — you do not concede it's a different basis. But the reason you want us to confirm the judgment — affirm the judgment below is that, in your view, it would be an abuse of discretion for the district court not to have the hearing. The preliminary hearing, correct. Limited— It would be an abuse of discretion not to do it on the facts of this case. We believe it would be an abuse of discretion not to do it on the facts of this case because on the pleading standards established in Iqbal and Twombly, we did it in allegations and— If I look at the statute you cited and come to a contrary conclusion, you're right. It takes a showing of fraud — what's the words — fraud, malfeasance, or— Misrepresentation of a material fact— That's correct. —to amend a final partnership administrative adjustment notice. I apologize. That's true. But since — yeah. But that's a really big issue because I think an IRS agent who says, I want to make sure there's none of those things, and that's why I'm issuing the subpoena, has a legitimate basis. So if I don't think it's an abuse of discretion or that you showed me much with respect to that issue, what's left for you? What other fact would you — could you plausibly have stated? Because we already said in Powell that the expiration of the statute of limitations doesn't make a difference. Correct. They can always have a legitimate statement of wanting to make sure that none of those three things happened. So what else in your allegations stands up? Well, I'm not sure it's in my allegation. I think it's in the affidavit. In the facts. Yes. All right. So what in — I'm sorry. The affidavit that was submitted by— All right. The evidence that was submitted. —by Feerfelder, which said— What else? —which said, I wanted to complete this examination and never mentioned anything about fraud or malfeasance, none of which have been even hinted about or suggested in this case as far as we're aware. Now, that would be something. There's this — always this dual-purpose problem that we have with the enforcement of these summonses. If a summons has a proper purpose and an improper purpose, I'm not sure we can possibly win in that situation. When we go to this preliminary hearing, we're trying to develop what evidence we can from the— There's an IRS regulation that says they can't use it in the criminal — in a criminal prosecution. Correct. So even if it was a dual purpose, what difference does it make, since they can't use it? Well, it's not the dual purpose. That's not the dual purpose I'm talking about. The dual purpose that I'm talking about is, for instance, to use this evidence solely in the tax court after the tax court case has been filed, after the FPAA has been issued. Just — Mary Feerfelder did not say that she was going to use this to try and investigate a fraud or a malfeasance or anything else like that. She only said she wanted it. She didn't say why she wanted it. She said she had examined the tax returns, and she had issued the FPAA, and a tax court case was underway, and seems to be just buying into the idea that the IRS has, which is that as long as you issue your summons before the FPAA comes out and the tax court case starts, you can enforce it no matter what. There's no problem. In your experience, how often does the IRS ask a taxpayer to waive the statute of limitations? Too much. I suspect that's your judgment, but in your experience, how often do they do it? I'd have to confer with my tax counsel, but in almost every significant case, they will ask for at least one extension of the statute of limitations. They all right. Now, going back to Powell, which And what normally happens if you say no? Usually they go forward and issue their final partnership administrative adjustment or their statutory notice of deficiency within the time that's permitted, or if they don't think they've got a problem, they let it go. That almost never happens. But the statutory notice of deficiency or the FPAA will come out. You usually don't get, when you're nearing the end of the statute of limitations, a raft of summonses like this, except apparently in this case and in this particular district, where it happens quite a bit. We think that the rules set forth relating to grand jury summons, which are usually subpoenas not being able to be used to bolster a criminal case after an indictment has already been issued, is universally accepted. We think that the Rule 2004 rule relating to bankruptcy subpoenas, which says that the bankruptcy subpoena can no longer be enforced once litigation is underway between the discovering party and the nondiscovering party about the subject of the actual subpoena, is universally accepted. Ginsburg-Miller, you told me before, I think, that the tax court can't stop it. I asked you the question, could the tax court say, now we're in court, any information has to be in compliance with the scope of discovery we allow? You said that because this is separation, the summons is enforced by the district court, the tax court will do nothing and, indeed, will accept the information that is made available as a result of the summons. We believe that that is ordinarily true. We can always make an argument to try and prevent particular evidence from coming in, in the tax court, but we can't absolutely know that we're going to be able to stop it in the tax court. It's going to be up to them to decide whether to accept the information. The real issue in this case isn't the documents, it's the examination. The examination that the IRS wants to take is an examination that basically has no strictures. It has no absolute right for counsel to be in attendance. It has no right for cross-examination. It has no limits on what the scope of the examination can be. It can be what is referenced in a lot of the cases about IRS summonses, a fishing expedition. And that's what the IRS wants to do here. And we're positive about that because of the way they have been pursuing this, including the deposition taken of Ms. Moog by the Mr. Sapinski attended. He was permitted to attend. We weren't invited to attend. The matter was ultimately came out that they didn't get much from Ms. Moog. I'm sure that's why she agreed to go ahead and give that deposition. But we couldn't insist on being there. We couldn't have insisted on cross-examining her. And what the IRS attorney who's handling the tax court case, we're positive, wants to do from all the things that have happened in that case is to get the examinations of the individuals who were summoned without us being able to control it and without us being able to examine at those examinations. Ginsburg. Do you agree with Ms. Harrington that the Salter case, where the government said in Salter, the First Circuit case, that the way to proceed is to call the agent, Ms. Harrington said, if I remember correctly, that the Salter decision became academic when Tepper passed. Do you agree with that? I do not agree with that. We believe that as Nero said, and I believe it was footnote four of Nero, that the Tefra enactment only affected issues relating to potential abuse of process relating to criminal prosecutions. And it was to resolve a problem that was created by the decision that you couldn't go based on the intention of a single agent having an intention of pursuing criminal prosecution, you had to look at the institutional intention of the IRS, and that meant you had to take the testimony of everybody in the IRS to establish what the institutional intention was. That got eliminated by Tefra, because now it has to be there's a referral or there's not a referral, and otherwise that issue doesn't come up. But it doesn't deal with the situation in which Powell says we're entitled to show at a meaningful adversary hearing anything else showing abuse of the court process, and that means abuse of the district court's process. And to us, the use of the district court's process in enforcing an IRS summons that's supposed to be used only for examinations, one of which has already been completed solely for the purpose of evading the rules of the tax court that control discovery, is an abuse of process. And we believe that that's what all the 2004 cases talk about, the Rule 2004 cases, Sadkowski, Bennett Funding, and Snyder, which I believe we've all cited in our briefs. We believe that if we don't get the ability to come forward with allegations that under Iqbal and Plomley would pass muster to support our allegations, that we're going to go back into the impermissible Catch-22 that the Eleventh Circuit talks about. And there will be an unreasonable circular burden because we have to have evidence to get evidence, and we can't get the evidence without already having the evidence. In our case, with respect to the evasion of the tax court rules, we believe that we already presented enough evidence, but the trial court judge didn't even look at that evidence and said that you absolutely, that's as a matter of law. That can't possibly be a defense to these summonses. Congress intended the courts to be a check on abusive use of administrative summonses. We believe that these we have shown by allegations and by our evidence that these were abusive attempts to use these administrative summonses. We believe that the judgment of the Eleventh Circuit should be affirmed, and if necessary to clarify what appears that a rule clarifying it, as I've indicated, with requiring pleadings that would pass muster under Iqbal would get you the entitlement of the preliminary hearing. Roberts. Thank you, counsel. Four minutes, Ms. Harrington. Thank you. If I just like, I'd like to start by clarifying the finality of the FPAA issue. I tried to be very careful in my answer to Justice Breyer, and if I misspoke, I apologize. What I intended to say or what I wanted to say was that the ongoing issue for the IRS is the — is it might amend its final determination of liability for the taxpayer once you're in the tax court. That happens in the tax court, not by amending the FPAA, and I didn't mean to suggest otherwise. But so thinking about the tax court, once you have the proceedings going there, the tax court itself has said that if you have a summons that was issued before the FPAA, it can be helpful to have that summons enforced because the information that would be acquired through enforcing that summons would be relevant to the ultimate question of the tax court. Breyer, I mean, if you change it to that, the only reason there that she in her affidavit, the agent, just says she wants the information to help decide the tax liability, she doesn't say anything specific. So you're saying the reason we wanted it is we wanted to change the tax liability, possibly. That's a matter in the tax court, and therefore you wanted it for the tax court. So now there's a question. Can you use a subpoena enforced through a court to get information that you, I think, are saying, correct me if I'm not right, has no purpose other than to change, modify, or help our case in the tax court? Well, that is the reason for enforcing the summons. That was not the reason for issuing the summons. I realize that. So if that is the only reason for enforcing the summons, I don't know, is there any more need for a hearing? I mean, it's a legal question. And the tax court has said that issuing a summons in that circumstance doesn't offend anything that's happening in the tax court, as Justice Ginsburg said. They can get information to help their case or change the liability in the tax court. And they say you can't. And they can go, as Justice Ginsburg suggested, they can go to the tax court. I don't think we can decide that, can we? Well, they can go to the tax court and say, look, we don't think this information should be included. That's what happens in the grand jury cases they cite. They don't try to go and quash a grand jury subpoena. What you do is you go in your criminal case in the district court and say you shouldn't use that information because it was obtained pursuant to a subpoena that was improperly issued. Now, the taxpayer, it's the taxpayer's duty to establish that the deductions it's taking are justified. And in this case, the IRS didn't have enough information to make its own determination about that. And so what it decided was the taxpayer hadn't met its burden and it issued the FPAA. And the IRS is entitled to take that protective step if the taxpayer is refusing to turn over information. Now, Respondents sort of pointed to several questions that they might want to ask the IRS agent who issued the summons. Those questions are clearly not relevant to the purpose for issuing the summons.  And just one last point on Iqbal. We really don't think Iqbal applies here because in this instance, what you're talking about is you already have a showing by the IRS that it has a proper purpose. And a district court is not going to issue an order to show cause unless the district court is satisfied that the IRS has established a proper purpose. And so the presumptions shift. They're the opposite of Iqbal in that context. In that context, there's a presumption that the IRS has a proper purpose. And this Court said in the LaSalle National Bank case that then the duty is on the summons opponent to disprove a proper purpose. And so the opponent isn't entitled to a presumption that what they say is correct. Kagan. Kagan. Could you say a little bit more, Ms. Harrington, about what it what what kind of evidence would overcome the presumption in a particular case? Well, so this Court identified in Powell two potential improper purposes. One would be harassment and one is an attempt to kind of leverage a settlement in a collateral matter. And I think, to take the second one, if the IRS were really trying to pressure a taxpayer into settling a collateral matter, the IRS would have some evidence of that, otherwise it would be a pretty ineffective attempt to leverage a settlement. Right? So they're going to have some communications from the IRS or something like that, and the taxpayer can submit affidavits or any kind of documentary evidence that's in the taxpayer's possession or the summons recipient's possession to the district court, and then the district court has discretion if it wants to hear more from the district court or yet. Thank you. Thank you, counsel. The case is submitted.